**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 28, 2012**

# In the Court of Appeals of Georgia

A12A1188. THOMAS v. THE STATE.

BRANCH, Judge.

Following a jury trial, Larry Elden Thomas was convicted of two counts of child molestation (OCGA § 16-6-4) and one count of enticing a child for indecent purposes (OCGA § 16-6-5).[1] He now appeals from the denial of his motion for new trial, asserting that current Georgia law regarding the admission of evidence of prior difficulties[2] between a defendant and a victim violates a defendant's constitutional

---

[1] The jury also acquitted Thomas of one count of false imprisonment.

[2] "Evidence of prior difficulties between a defendant and a victim is generally admissible when the crime charged was perpetrated against the victim and the evidence demonstrates: (1) the relationship between the defendant and victim, and (2) the defendant's motive, intent or bent of mind. As with any evidence, evidence of prior difficulties may not be unduly prejudicial, remote or confusing to the jury." (Footnote omitted.) *Tuff v. State*, 278 Ga. 91, 92 (2) (597 SE2d 328) (2004).

rights to a fair trial and due process. Thomas also claims that, even if Georgia law regarding the admission of prior difficulties is valid, the trial court nevertheless erred in admitting that evidence. He further contends that the court below erred by allowing testimony that improperly bolstered the victim's credibility and improperly commented on the ultimate issue of his guilt. Finally, Thomas asserts that he received ineffective assistance of counsel. Finding no error, we affirm.

Viewed in the light most favorable to the verdict,[3] the record shows that at the time of the two incidents in question Thomas was living with the victim's older sister, in the same family home where the eleven-year old female victim resided.[4] The victim testified that on one occasion, while Thomas and she were playing on separate computers in the same room, Thomas came and stood beside her and, while holding his penis in his hand, rubbed it on her arm. On another occasion, the victim's sister told her that Thomas wanted the victim to go to the basement of the home, because he had something he wanted to show her on the computer. When the victim arrived in the basement, Thomas told her to close her eyes; when Thomas instructed her to open her

---

[3] *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007).

[4] Thomas had dated the sister for a period of time before he moved in with the family, and he is now married to the sister.

eyes, the victim saw Thomas standing with his penis exposed and the computer displaying pornographic images. Thomas then tried to get the victim to touch his penis, but she instead screamed for her sister and attempted to flee the room. According to the victim, Thomas grabbed her wrist and shut the door to the room, in an effort to prevent her from leaving.

With regard to prior difficulties, the State presented evidence of four prior occasions on which Thomas acted in a sexually inappropriate way towards the victim. On one occasion, Thomas engaged in a pillow fight with the victim and her young stepsisters. Thomas was standing in a bathroom and the girls threw pillows from the adjoining bedroom at each other and at Thomas, and during this incident Thomas exposed his penis to the victim.[5] Additionally, the victim explained that every time Thomas threw a pillow back, it had a small wet spot on it. During another incident, the victim and her stepsisters were playing on a trailer bed in the yard, using it as a kind of see-saw. Every time the victim went down on the see-saw, she would come

_____

[5] While the victim did not testify at trial that Thomas exposed his penis during the pillow-fighting incident, she did state, during her recorded forensic interview, that Thomas exposed himself during that incident, and the recording of this interview was played for the jury. Additionally, Thomas's wife, who is also the victim's sister, testified at trial and confirmed that the victim had previously stated that Thomas exposed his penis to her during the pillow fight.

3

close to Thomas, who would fondle her buttocks. The remaining two incidents each involved Thomas exposing his penis to the victim.

1. Thomas argues that the court below erred in admitting evidence of these four incidents because Georgia law allowing the introduction of prior difficulties to show a defendant's bent of mind or course of conduct violates the defendant's constitutional rights to a fair trial and due process. Given the constitutional nature of these claims, Thomas appealed to the Supreme Court of Georgia. Finding that Thomas had failed to make his constitutional argument to the trial court, our Supreme Court declined to consider this claim and transferred the case to this Court. See *City of Decatur v. DeKalb County*, 284 Ga. 434, 435-436 (1) (668 SE2d 247) (2008). Like our Supreme Court, "[t]his court will not consider arguments neither raised nor ruled on in the trial court and that are asserted for the first time on appeal." (Citations omitted.) *Chiaka v. Rawles*, 240 Ga. App. 792, 796 (4) (525 SE2d 162) (1999). Accordingly, we decline to address Thomas's first enumeration of error.

2. Thomas asserts that the court below violated his constitutional rights to due process and a fair trial when, before admitting the evidence of prior difficulties between the victim and Thomas, it failed to conduct an explicit balancing test to determine whether the probative value of this evidence outweighed the prejudice it

4

would cause Thomas. This Court has previously held, however, that "there is no requirement that the trial judge conduct an 'explicit' balancing test in order to conclude that the probative value of the evidence outweighs its prejudicial effect." (Footnote omitted.) *Futch v. State*, 316 Ga. App. 376, 382 (2) (730 SE2d 14) (2012). Morever, requiring trial courts to engage in an explicit balancing test before allowing the admission of prior difficulties would be superfluous. By finding that evidence is admissible as a prior difficulty, the trial judge is necessarily finding that "the State seeks to introduce the evidence for an appropriate purpose as it tends to prove the defendant's motive or intent, or the state of the relationship between the victim and the defendant; there is sufficient evidence that the defendant and the victim were the parties involved in the prior difficulty; and there is a sufficient connection between the prior difficulty and the crime charged." *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998). Inherent in the finding that evidence of prior difficulties is admissible, therefore, is the conclusion that the probative value of that evidence outweighs its prejudicial impact. *Farley v. State*, 265 Ga. 622, 625 (2) (458 SE2d 643) (1995). And "evidence that is otherwise relevant or material to the issues in a criminal case does not become inadmissible simply because it concerns separate offenses, or because it incidentally puts a criminal defendant's character or reputation in evidence." (Citation,

5

punctuation and footnote omitted.) *Attaway v. State*, 259 Ga. App. 822, 829 (7) (578 SE2d 529) (2003).

3. Thomas contends that it was error for the trial court to admit evidence of the incident in which Thomas fondled the victim's buttocks and the incident involving the pillow fight. Specifically Thomas argues that these incidents were not sufficiently similar to the indicted incidents to qualify as prior difficulties. This argument misapprehends the law regarding evidence of prior difficulties.

> Unlike similar transactions, prior difficulties do not implicate independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people involved in the prosecution and are related and connected by such a nexus. *Thus, the admissibility of evidence of prior difficulties does not depend upon a showing of similarity to the crime for which the accused is being tried.*

(Citation and punctuation omitted; emphasis supplied.) *Stokes v. State*, 289 Ga. 702, 705 (3) (715 SE2d 81) (2011). Instead, evidence demonstrating prior difficulties between the victim and the accused is "generally admissible when the crime was perpetrated against the victim and the evidence demonstrates: (1) the relationship between the defendant and the victim, and (2) the defendant's motive, intent or bent of mind." (Footnote omitted.) *Tuff*, 278 Ga. at 92 (2). Accordingly, the evidence

6

regarding both incidents was admissible, as it showed both Thomas's "bent of mind towards and course of conduct with" the victim. *Stokes*, supra.

Thomas also contends that evidence concerning the pillow fight should have been excluded because it was "extremely prejudicial." Specifically, Thomas argues that the victim's testimony that the pillows he threw at the girls had small wet spots on them implied that he was in the bathroom masturbating during the pillow fight. This argument, however, ignores the evidence showing that, just as in the indicted incidents, Thomas exposed his penis to the victim during the pillow fight. The mere fact that some additional aspects of this incident might also reflect negatively on Thomas's character did not render evidence of that incident inadmissible. *Bagwell v. State*, 270 Ga. 175, 178 (1) (c) (508 SE2d 385) (1998).

4. Thomas claims the court below erred in admitting certain testimony of both the victim's mother and the forensic interviewer and in allowing certain questions by the State during direct examination of the victim. We find no merit in these assertions.

(a) The defense theory presented at trial was that the victim, who had been very close to her older sister throughout her life, was jealous of Thomas because of her sister's relationship with him. Thus, the defense posited that the victim had fabricated the claims of molestation to separate the sister from Thomas. In an attempt to counter

7

this defense theory, the State presented testimony that the victim's allegations had in fact estranged her sister from the family. And when the prosecutor asked the victim's mother why she had not spoken to the victim's sister in several years, the mother responded: "In my opinion, [my daughter] made her choice . . . [s]he married [Thomas] several days after all this happened, and . . . I can't condone her marrying somebody that would do this to her sister. That's just wrong." At trial, defense counsel did not object to this testimony, but Thomas now contends that this testimony should have been excluded because it impermissibly bolstered[6] the victim's credibility and improperly commented on the ultimate issue of Thomas's guilt. While Thomas acknowledges that his failure to make a contemporaneous objection would normally preclude appellate review of this claim of error, see *Thomas v. State*, 256 Ga. App. 712, 714 (2) (569 SE2d 620) (2002), he asserts that the admission of the mother's testimony was so egregious as to constitute plain error. We disagree.

---

[6] "Improper bolstering refers to character evidence intended to show a witness' veracity, that is, his tendency to tell the truth." (Citation and punctuation omitted.) *Greene v. State*, 295 Ga. App. 803, 811 (8) (b) (673 SE2d 292) (2009). Thus, improper bolstering occurs where one witness offers testimony indicating that another witness offered truthful testimony. *Handley v. State*, 289 Ga. 786, 787-788 (2) (a) (716 SE2d 176) (2011).

"Under the plain error rule, we will consider issues not properly raised and ruled upon in the trial court where the alleged error is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or seriously affects the fairness, integrity or public reputation of a judicial proceeding." (Citation, punctuation, footnotes and emphasis omitted.) *Horne v. State*, 262 Ga. App. 604, 606 (1) (586 SE2d 13) (2003). This Court has previously held, however, that the admission of evidence which serves only to bolster another witness's credibility "is not the kind of error that seriously affects the fairness, integrity, or public reputation of a judicial proceeding." (Footnote omitted). Id. Further, "no grave miscarriage of justice is likely to result if we allow [Thomas's] procedural default to stand." Id. Reviewed in the context of all the evidence presented, we find it unlikely that this single statement by the mother affected the outcome of trial; we must conclude, therefore, that no plain error occurred. *Al-Attawy v. State*, 289 Ga. App. 570, 573 (1) (657 SE2d 552) (2008) (reviewing bolstering testimony in the context of all the evidence to determine whether it affected the outcome of the trial); *Horne*, 262 Ga. App. at 606 (1) (where the bolstering testimony is not the only evidence linking the defendant to the crime, "it is highly probable" that the admission of such evidence "did not contribute to the

9

jury's verdict") (footnote omitted); *Gosnell v. State*, 247 Ga. App. 508, 510-511 (2) (c) (544 SE2d 477) (2001).

Nor do we find that this testimony improperly commented on the ultimate issue of Thomas's guilt. To support his claim, Thomas relies on, *Patterson v. State*, 278 Ga. App. 168 (628 SE2d 618) (2006); this reliance is misplaced. *Patterson* stands for the well-established rule that *an expert* may not offer an opinion on an ultimate issue of fact – including the issue of the defendant's guilt – where the jury is capable of making that determination without expert assistance. Id. at 170-171. Here, the mother testified not as an expert, but as an presumptively-biased parent. Her testimony merely showed that she believed her child, and it did not impermissibly intrude upon the jury's fact-finding function.

(b) The State presented the testimony of the licensed clinical social worker who conducted the forensic interview of the victim and whom the State qualified as an expert on forensic interviewing. On cross-examination, defense counsel asked this witness why a child would ever make a false allegation of child molestation, and she responded that there may be instances where a child had been coached by an adult to say certain things. On redirect, the State asked if the victim showed any signs of coaching or if the interviewer believed that the interview had been successful in

10

determining what actually happened. The witness indicated she did not feel the victim had been coached, explaining that the details provided by the victim were not "what you would commonly think a kid could make up." The witness further explained that in determining whether a child was giving an accurate account of an incident, "you're looking for details. You're looking for consistency. You're looking for does it make sense. You're looking for if you ask it differently[,] do they kind of go there." The witness then concluded that, during the interview, the victim "was able to do that. She didn't get lost when you asked another question. She determined the answer or clarified what she needed to know to determine the answer."

Although Thomas did not object to this testimony at trial, he argues that it should have been excluded because it impermissibly bolstered the victim's credibility by implying that she was telling the truth about Thomas's alleged molestation of her. We find no error, plain or otherwise, in the admission of this testimony.

An expert witness may not bolster the testimony of a victim by opining "as to whether the complaining witness is telling the truth, because that is an ultimate issue of fact and the inference to be drawn is not beyond the ken of the average juror." (Punctuation and footnote omitted.) *Al-Attawy*, 289 Ga. App. at 572 (1). An expert, however, may give "opinion testimony that bolsters the credibility of the indicted

11

allegations of sexual abuse, e.g., . . . 'the victim's psychological examination was consistent with sexual abuse.'" (Punctuation omitted.) *Odom v. State*, 243 Ga. App. 227 (1) (531 SE2d 207) (2000). See also *Brown v. State*, 293 Ga. App. 633, 636 (1) (c) (667 SE2d 899) (2008) (physician with expertise in treating rape victims may testify as to her objective observations of the victim, including "whether [the] victim's demeanor or behavior is consistent with that of a sexual assault victim, generally.") Such testimony is admissible because of its relevance and probative value. "Establishing the credibility of the indicted acts of sexual abuse is what the State's case is all about and is the purpose for such expert testimony in the first place; the fact that such testimony may also indirectly, though necessarily, involve the child's credibility does not make it inadmissible." (Punctuation and footnote omitted.) *Odom*, 243 Ga. App. at 227-228 (1).

In this case, the expert testified as to her observations of the victim and to her conclusion, based on those observations, that the victim's description of the molestation did not appear to be coached. There was no error in admitting this testimony because, although it supported the child's claims, it did not "directly address the credibility of the victim or express a direct opinion that the victim was sexually abused." (Citations and punctuation omitted.) Id. at 229 (1) (a). See also

*Anthony v. State*, 282 Ga. App. 457, 459 (2) (638 SE2d 877) (2006) (officers trained to look for "certain behaviors in people who might be making false statements" may testify as to whether a victim exhibited any of those behaviors without impermissibly bolstering the victim's credibility) (punctuation omitted).

(c) Thomas contends that the State's direct examination of the victim improperly bolstered the victim's own testimony. Again, Thomas failed to object to this testimony and therefore waived review of its admission. And again, we find no plain error. During her testimony regarding the prior difficulties between Thomas and herself, the victim explained that, prior to conduct for which Thomas was indicted, she told her family of the other occasions on which he had exposed himself to her. She recanted her statements, however, because her father "looked mad at me" and her sister "was pretty much freaking out, like she was crying, she was shaking." Following this testimony, the prosecutor asked the victim if "the things that you told this jury about what [Thomas] did to you at your dad's did that really happen?" The victim responded affirmatively and the prosecutor then asked "[d]o you understand that what you told your dad . . . wasn't true when you told him you lied?" The victim again responded affirmatively.

13

After the victim testified as to the charged offenses of molestation, the prosecutor asked "with regard to this last time that you decided to tell, have you ever gone back on that and said that you lied?" The victim stated that she had never recanted her allegations that led to Thomas's indictment, and the prosecutor then asked her "the stuff that you're telling the jury about what [Thomas] did to you, is it true or made up?" The victim responded that she was telling the truth.

It is true that one witness "can never bolster the credibility of another witness as to whether the witness is telling the truth." (Citation and punctuation omitted.) *Handley*, 289 Ga. at 787-788 (2) (a). We know of no legal reason, however, why a witness should "be prohibited on direct examination from asserting his own credibility by testifying that he is telling the truth and giving some explanation." (Citations omitted.) Id. at 788 (2) (a). Allowing a witness to explain prior recantations and to assert that she is now being truthful still leaves the issue of credibility up to the jury, which is free to believe or disbelieve all or part of the victim's testimony, including her assertion as to her truthfulness. Here, the victim testified at trial and was subject to cross-examination by the defendant, "thereby giving the jury the opportunity to judge her demeanor and credibility during that examination." (Citation, punctuation and footnote omitted.) *Lynn v. State*, 300 Ga. App. 170, 173 (2) (684 SE2d 325)

14

(2009). It remained solely for the jury, therefore, viewing that testimony in light of the other evidence, to assess the victim's credibility and determine whether her testimony – including her assertion that she was telling the truth – was, in fact, truthful. *Louisyr v. State*, 307 Ga. App. 724, 730 (1) (706 SE2d 114) (2011). "Under these circumstances, we find that the challenged testimony did not usurp the authority of the jury on the issue of [the victim's] credibility," *Al-Attawy*, 289 Ga. App. at 574 (1) (footnote omitted), nor did it usurp the jury's authority to decide the ultimate issue of Thomas's guilt. Accordingly, we find no plain error regarding the State's questions to the victim on direct examination.

5. Thomas asserts that he received ineffective assistance of counsel, based on his lawyer's failure to object to: (a) the testimony of the mother and the expert witness that he alleges improperly bolstered the credibility of the victim; (b) the testimony of the mother that he contends went to the ultimate issue of his guilt; (c) the questions posed by the State during its direct exam of the victim that Thomas claims improperly bolstered the victim's credibility and addressed the ultimate issue of guilt; (d) the testimony of the victim and her mother that Thomas had exposed himself to the victim on multiple occasions; and (e) the introduction of any evidence of prior difficulties. We find no merit in these claims.

15

The standard by which we assess a claim of ineffective assistance of counsel is well settled:

> To prevail on his claim of ineffective assistance of counsel, [a defendant] must prove both that the performance of his lawyer at trial was deficient and that he was prejudiced by this deficient performance. To prove that the performance of his lawyer was deficient, [a defendant] must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. And to prove that he was prejudiced by the performance of his lawyer, [a defendant] must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This burden, although not impossible to carry, is a heavy one.

(Citations and punctuation omitted.) *Shields v. State*, 307 Ga. App. 830, (706 SE2d 187) (2011). If an appellant fails to meet either prong of the test for ineffective assistance of counsel, it is not incumbent upon this Court to examine the other prong. *Battles v. State,* 290 Ga. 226, 229 (2) (719 SE2d 423) (2011).

(a) Thomas cannot show that ineffective assistance resulted from trial counsel's failure to object to the allegedly bolstering testimony of the mother or the State's expert.

16

(i) Assuming that Thomas could show that his lawyer was deficient for failing to object to the allegedly bolstering testimony of the victim's mother, he cannot show that this deficiency prejudiced him. As explained in Division 4 (a),we find it unlikely that this testimony affected the outcome of trial. Accordingly, the admission of this statement cannot satisfy the prejudice prong of an ineffective assistance claim. See *Schofield v. Holsey*, 281 Ga. 809, 811-812 (II) (642 SE2d 56) (2007).

(ii) As discussed in Division 4 (b), the testimony of the forensic interviewer did not serve to impermissibly bolster the victim's testimony. Rather, it was based on the interviewer's observations of the victim and her expert opinion that the victim's interview responses did not indicate that she had been coached by an adult. Accordingly, the evidence was relevant and admissible and the failure of Thomas's lawyer to object to its admission did not constitute deficient performance. *Greene*, 295 Ga. App. at 811 (8) (b).

(b) As also demonstrated in Division 4 (a), the mother's testimony was not objectionable as improperly commenting on the ultimate issue of Thomas's guilt, as that testimony did not intrude into the jury's fact finding function. Thomas, therefore, cannot show that his lawyer's conduct in this instance constituted deficient performance. See *Williams v. State*, 290 Ga. App. 841, 845 (4) (b) (660 SE2d 740)

17

(2008) ("Trial counsel cannot be deemed ineffective for failure to make a futile or meritless objection.")

(c) Trial counsel also acted properly when he did not object to the State's direct examination of the victim because, as demonstrated in Division (4) (c), there was nothing objectionable about that line of questioning. Moreover, trial counsel explained at the hearing on Thomas's motion for a new trial that his decision not to object to that testimony was strategic and based on his understanding of the law. Specifically, the lawyer explained that he did not think he had grounds for a legal objection because "there is a lot more leeway given to direct examination of child witnesses than an adult witness." See *Roberts v. State*, 232 Ga. App. 745, 747 (4) (503 SE2d 614) (1998) (in child molestation case, trial court did not abuse its discretion in permitting the prosecution to ask repetitive and leading questions to the victim). He also noted that it is accepted practice to question a child witness as to whether they know the difference between the truth and a lie and whether she understands she must tell the truth on the stand. See *Sprayberry v. State*, 174 Ga. App. 574, 575-576 (1) (330 SE2d 731) (1985); OCGA § 24-9-7. Additionally, the lawyer felt he might alienate the jury if he objected to the prosecutor's questions with the child on the stand. Given that the lawyer's reasons for not objecting to these questions was based on an accurate

18

understanding of the law and that the decision was also strategic in nature, this conduct cannot serve as the basis of an ineffective assistance claim. *Farris v. State*, 293 Ga. App. 674, 677-678 (2) (667 SE2d 676) (2008) (finding that defense counsel who applied a valid trial strategy was not ineffective for making a tactical decision not to object to certain testimony).

(d) Thomas claims his counsel wrongly failed to object to testimony by the victim and her mother to the effect that Thomas had exposed himself to the victim many times. During her testimony, when asked how many times Thomas had exposed himself to her, the victim responded "[p]robably so many times that I can't remember all of them." Similarly, the victim's mother explained, at the beginning of her testimony, that she asked her older daughter and Thomas to move out of the family home because Thomas "continued" exposing himself to the victim. When asked if the victim had reported to her mother the act of molestation that occurred in the computer room, the mother stated, "I don't remember. I mean there were so many different times, I don't remember." And when recalling the act of molestation that occurred in the basement, the mother testified that the victim came up the stairs shouting, "he did it again, he did it again."

19

At the motion for new trial hearing, Thomas's attorney testified that he did not object to the testimony of the victim and her mother that referred to Thomas exposing himself to the victim on multiple occasions because that testimony was supported by the evidence. The State had presented evidence of four instances of prior difficulties and the two incidents for which Thomas was indicted. The lawyer interpreted the testimony of the victim and her mother as referring to those six instances and, therefore, did not believe he had a basis for an objection. Under the circumstances, we cannot say the lawyer's conclusion was so objectively unreasonable as to amount to deficient performance. See *Farris*, 293 Ga. App. at 677 (2) (where trial counsel's failure to object was based on a reasonable belief that he had no basis for an objection, his performance was not deficient).

(e) Thomas also asserts that his lawyer should have either filed a motion in limine seeking to exclude the four instances of prior difficulties, or he should have objected at trial to the admission of that evidence. For the reasons discussed in Division 3, each of these incidents was admissible as a prior difficulty between Thomas and the victim, to show Thomas's bent of mind towards and course of conduct with the victim. Accordingly, a motion to exclude this evidence would have been futile, and any objection to its introduction would have been meritless. Failure

20

either to pursue a futile motion or to make a meritless objection cannot constitute deficient performance. *Smith v. State*, 302 Ga. App. 128, 135 (2) (b) (690 SE2d 449) (2010); *Ferguson v. State*, 307 Ga. App. 232, 237 (2) (704 SE2d 470) (2010).

Finally, Thomas argues that his lawyer's failure to object to the prior difficulties evidence, either at trial or by way of a motion in limine, together with his failure to object to the testimony referencing the multiple times he exposed himself to the victim, had a cumulative, prejudicial effect on his defense. See *Waits v. State*, 282 Ga. 1, 6 (4) (644 SE2d 127) (2007) (under Georgia law, "each individual error by defense counsel should not be considered in a vacuum . . . it is the cumulative prejudice of counsel's errors which is constitutionally relevant") (citation omitted). Thomas's cumulative prejudice argument fails because, as explained above, none of the errors on which he bases this claim satisfy the first prong of an ineffectiveness claim – i.e., none of the alleged errors constitutes deficient performance. Id. at 6 (4) (where none of the errors alleged by the defendant show deficient performance by trial counsel, there are no errors to be considered in a cumulative-prejudice analysis).

For the reasons set forth above, we affirm the order of the court below denying Thomas's motion for a new trial.

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*

21