**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 10, 2014**

# In the Court of Appeals of Georgia

A13A1997. HOKE v. THE STATE.                    DO-075 C

DOYLE, Presiding Judge.

Stephen R. Hoke appeals from the denial of his motion for new trial following his conviction by a jury of aggravated child molestation[1] (one count) and child molestation[2] (three counts). Hoke contends that the trial court erred by (1) granting ex parte a continuance of the trial and excusing the unsworn jury, (2) failing to sua sponte recuse itself, (3) allowing a certain witness to bolster the victim's credibility, (4) admitting unrelated uncharged acts committed against the victim's mother and failing to give a limiting instruction as to that evidence, (5) admitting an unredacted recording of a police interview of Hoke containing allegedly improper comments on

---

[1] OCGA § 16-6-4 (a) (1).

[2] OCGA § 16-6-4 (c).

Hoke's and the victim's credibility. He also raises an ineffective assistance of counsel claim based on certain enumerations. For the reasons that follow, we affirm.

Construed in favor of the verdict,[3] the evidence shows that Tina Hoke moved to Georgia from Ohio with her eight-year-old daughter, A. C. Tina moved in with Stephen Hoke to get away from her husband, Stephen's brother, Charles Hoke, who lived in Ohio. During the time Tina and A. C. stayed with Stephen, Stephen touched A. C. inappropriately while bathing her, "french kissed" her, masturbated with her, forced her to perform oral sex on him, and touched their genitals together. A. C. disclosed the abuse to her mother, who confronted Stephen, and he denied it and beat A. C. based on the accusation. Thereafter, on a visit to Ohio, A. C. disclosed the abuse to her step-father, Charles, who consulted an attorney and ultimately contacted A. C.'s biological father, Matthew Corliss. Based on advice from his attorney, Corliss arranged for a forensic interview. During a subsequent police investigation, Hoke volunteered to be interviewed by police, at which time he denied the abuse.

Based on A. C.'s disclosures of abuse, Hoke was charged with child molestation and aggravated child molestation. Following a jury trial, he was

---

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

2

convicted on all counts and his motion for new trial was denied, giving rise to this appeal.

1. Hoke first contends that the trial court erred by excusing the jury after an ex parte conference with the State about a problem with the State's witnesses. Late in the day after the first day of trial (Monday), the State learned that one of its expert witnesses, who was located in Ohio, was called back by his employer while at the airport to fly to Georgia to testify the next day. The employer had refused to allow the witness to testify absent a valid subpoena from an Ohio court. The next morning the State reported the problem to the court and to Hoke's counsel. Hoke's counsel agreed to a one- or two-day delay to allow the State to address the problem. Later that same afternoon, the State gave the court an update outside the presence of Hoke or his counsel, and the court dismissed the jury, which had been selected but not sworn in.

Two days later, on Thursday, the court convened a hearing on the State's motion for a continuance, and Hoke opposed the continuance, citing his readiness, the lack of a valid subpoena, and his speedy trial demand. The trial court granted the continuance and at the end of the hearing, after the court had dismissed the parties, Hoke's counsel requested clarification as to whether the court was granting a mistrial or continuing the case with the same jury. The court informed Hoke's counsel for the

first time that it had already dismissed the jury. Over counsel's continued objection to the ex-parte dismissal, the trial court granted the State a continuance. Hoke now assigns this as error.

This Court addressed a similar situation in *Mora v. State*,[4] in which a jury was dismissed ex parte before being sworn in. In that case we addressed the trial court's grant of a continuance as follows:

> While we apply the strict terms of OCGA § 17-8-25[5] [addressing the grounds for a continuance based on the absence of a witness] in reviewing the *denial*, as opposed to the *grant*, of a motion for continuance, the *grant* of a continuance despite the absence of a subpoena does not automatically constitute error. OCGA § 17-8-33 (a) authorizes a court to grant a continuance whenever required by the absence of a material witness or the principles of justice. [Prior to and during the hearing on the continuance] the [S]tate set forth its reasons

---

[4] 292 Ga. App. 860 (666 SE2d 412) (2008).

[5] OCGA § 17-8-25 provides as follows: "In all applications for continuances upon the ground of the absence of a witness, it shall be shown to the court that the witness is absent; that he has been subpoenaed; that he does not reside more than 100 miles from the place of trial by the nearest practical route; that his testimony is material; that the witness is not absent by the permission, directly or indirectly, of the applicant; that the applicant expects he will be able to procure the testimony of the witness at the next term of the court; that the application is not made for the purpose of delay but to enable the applicant to procure the testimony of the absent witness; and the application must state the facts expected to be proved by the absent witness."

4

why the absent witness's testimony was relevant and material to the case. The grant or denial of a motion for continuance is within the sole discretion of the trial judge, and absent a showing that such discretion was abused, it will not be controlled. The trial court did not abuse its discretion by allowing a continuance in order to allow the [S]tate to procure the attendance of a material witness. *The fact that the continuance was granted ex parte does not change this result.*[6]

We find no reason to depart from this reasoning here. The original jury was not sworn, so jeopardy had not attached; the State had shown that the absent witnesses were material; trial resumed one month later; and Hoke was not surprised by the presence of the witnesses at issue. Accordingly, while we do not condone the ex parte nature of the trial court's actions in this case, we discern no error requiring reversal.

2. Hoke next contends that the trial court should have sua sponte recused itself after the ex parte communication and dismissal of the jury. But Hoke did not move for recusal within five days as required by Uniform Superior Court Rule 25.1.

---

[6] (Citations and punctuation omitted; emphasis omitted and supplied.) *Mora*, 292 Ga. App. at 863 (2), citing *Parker v. State*, 282 Ga. 897, 898-899 (2) (655 SE2d 582) (2008); *Campbell v. State*, 181 Ga. App. 790, 791 (354 SE2d 10) (1987).

Because "appellant did not timely file a motion for [the trial judge] to recuse himself, the matter of recusal is waived."[7]

3. Hoke also argues that the trial court erred by allowing the State's expert witness, Dr. Paul McPherson, to bolster the credibility of the victim, and that his attorney's failure to object to the testimony constituted ineffective assistance of counsel.

McPherson performed a physical exam of A. C. in Ohio, and at trial, he was qualified as an expert in child sexual abuse.[8] During the State's direct examination, he testified as follows:

Q: Now, when children are in interviews, do you look for coaching?

---

[7] *In re Adams*, 292 Ga. 617, 617 (1) (740 SE2d 134) (2013), citing *Hampton v. State*, 289 Ga. 621 (4) (713 SE2d 851) (2011); *Butts v. State*, 273 Ga. 760 (546 SE2d 472) (2001). See also *Woodall v. State*, __ Ga. __, __ (9) (Case No. S13A1564; decided Jan. 27, 2014) (finding waiver of recusal where counsel objected to judge's participation based on an appearance of impropriety but failed to move to recuse the judge). Hoke's reliance on *Hargis v. State*, 319 Ga. App. 432, 437 (2) (a) (735 SE2d 91) (2012) (certiorari granted May 20, 2013), is unavailing in this case where the ex parte communication was for the administrative purpose of scheduling. See Georgia Code of Judicial Conduct, Canon 3 (B) (7) (a).

[8] The results of the physical exam were normal; McPherson also reviewed a transcript of a forensic interview with A. C.

A: When we have children come in for an evaluation . . . we look for other reasons why the child may say they were touched. . . And that will help us to determine if what the child says is consistent with our evaluation. . . . In terms of coaching, so to speak, a child – we ask for details and context of the abusive events. So, for example, going back to the bathtub . . . I could have just thought, well he was just washing her like a dad would or a stepfather would. But when you ask details and context, then you start to get information that a child wouldn't learn from being coached.

For example, in [A.C.'s] case she talked about how it hurt to pee after he touched her. Okay; that is something that can occur if the area where the pee comes out, called the urethra, is rubbed the wrong way or irritated. Okay; that's something that a child typically will not know unless its actually happened.

And so those type of details and context, verbal interactions, sensory motor details, add credibility so to speak to the child's disclosure and we can use that as part of our diagnosis.

(a) This Court has addressed nearly identical testimony and found it to be admissible in the present context. "An expert witness may not bolster the testimony of a victim by opining as to whether the complaining witness is telling the truth, because that is an ultimate issue of fact and the inference to be drawn is not beyond

7

the ken of the average juror."[9] But an expert may properly describe examination techniques and provide opinions about whether the results of an evaluation are "consistent with sexual abuse."[10] The testimony here was given in this context; "[e]stablishing the credibility of the indicted acts of sexual abuse is what the State's case is all about and is the purpose for such expert testimony in the first place; the fact that such testimony may also indirectly, though necessarily, involve the child's credibility does not make it inadmissible."[11] In this case, "[t]here was no error in admitting this testimony because, although it supported the child's claims, it did not "*directly* address the credibility of the victim or express a direct opinion that the victim was sexually abused."[12]

(b) Moreover, because we find no error in admitting this testimony, this argument cannot support Hoke's claim for ineffective assistance of counsel.[13]

---

[9] (Punctuation omitted.) *Thomas v. State*, 318 Ga. App. 849, 855 (4) (b) (734 SE2d 823) (2012).

[10] (Punctuation omitted.) Id.

[11] (Punctuation omitted.) Id.

[12] (Punctuation omitted; emphasis supplied.) Id.

[13] See *Riddick v. State*, 320 Ga. App. 500, 504 (4) (b) (740 SE2d 244) (2013) (futile objection cannot support a claim for ineffective assistance of counsel).

8

4. (a) Hoke next contends that the trial court erred by admitting evidence that he choked and struck Tina and by failing to give a limiting instruction as to that evidence. He argues that this evidence was inadmissible as similar transactions. But the evidence was not offered as similar transactions to prove the offenses themselves, it was offered to explain Tina's passive approach to reporting the abuse. Tina testified that Hoke was "controlling," and that her fear of Hoke prevented her from calling 911. The evidence of Hoke's violence toward Tina was evidence supporting this theory of the case, not as similar transaction evidence. "Whether to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is relevant and material to an issue in the case is not rendered inadmissible because it incidentally places the defendant's character in issue."[14] Under the facts of this case, we discern no abuse of discretion in admitting it or failing, absent a request, to give a limiting instruction about the evidence.[15]

---

[14] (Punctuation omitted.) *Hernandez v. State*, 304 Ga. App. 435, 437 (3) (696 SE2d 155) (2010).

[15] See id. See also *Jones v. State*, 263 Ga. 835, 839 (3) (439 SE2d 645) (1994) (no limiting instruction required); *Riddick*, 320 Ga. App. at 504 (4) (b); *Brooks v. State*, 199 Ga. App. 525, 526 (1) (405 SE2d 343) (1991) (Because "the statements were admissible for the purpose of explaining the circumstances surrounding the crime, no limiting instructions were required in the absence of a request."). See also *State v. Byrd*, 255 Ga. 665, 668 (341 SE2d 455) (1986) (requiring request by

9

(b) Hoke also argues that failing to request a limiting instruction constituted deficient performance, but his trial counsel testified at the motion for new trial hearing that the alleged domestic violence was "a key component to our closing argument," during which Hoke's counsel attacked her credibility. Because the admission of the evidence was not an abuse of discretion and trial counsel used it as part of his reasonable trial strategy to attack the witness's credibility, Hoke's ineffective assistance claim fails on this ground.[16]

5. Finally, Hoke contends that the trial court erred by admitting an unredacted audio recording and transcript of Hoke's police interview. He challenges statements from the detective such as "why would this precious little girl tell a lie?" and "I just know that this little child does not lie," and argues that they impermissibly commented on A. C.'s credibility. For this reason, he also argues that trial counsel's failure to object constituted ineffective assistance of counsel.

---

defendant for a limiting instruction about impeachment evidence that incidentally injects character).

[16] See *Ford v. State*, 290 Ga. 45, 49 (5) (d) (717 SE2d 464) (2011) ("An attorney's decision not to seek a limiting instruction to avoid drawing [further] attention to the subject of the instruction is a matter of trial strategy that falls within the range of reasonable professional conduct when, as here, it is a reasonable decision."). Here, Hoke's counsel requested a bench conference to voice an objection to the testimony.

Nevertheless,

[c]omments made in such an interview and designed to elicit a response from a suspect do not amount to opinion testimony, even when [evidence] reflecting the comments is admitted at trial. The question, therefore, is not whether [Hoke's] lawyer should have objected to [the officer] offering opinion testimony, but instead whether [he] should have objected that the testimony was without probative value or was too prejudicial to be admitted.

Like any other evidence, testimony reflecting comments made by an officer in the course of an interview ought not be admitted if the probative value of the testimony is substantially outweighed by its tendency to unduly arouse emotions of prejudice, hostility, or sympathy.[17]

Here, Hoke had initiated contact with police and requested to explain his version of the allegations against him. He admitted to certain general circumstances surrounding the abuse, such as locations and times, but he adamantly denied any inappropriate behavior. In this context,

the comments about which [Hoke] complains reflected an aggressive interrogation technique designed to test the truthfulness of [Hoke's] . .

---

[17] (Citations and punctuation omitted.) *Butler v. State*, 292 Ga. 400, 406 (3) (a) (738 SE2d 74) (2013).

11

. story. . . .[18] [Further, t]he probative value of this testimony was not substantially outweighed by its prejudicial effect. It hardly would have surprised anyone observing the trial to learn that [the interviewing officer] was not satisfied with [Hoke's] story . . . and believed instead that [Hoke] was not telling the whole truth about what had happened to [A. C.], and any rational juror could have surmised as much without being told explicitly. Such comments upon the patently obvious generally pose little, if any, danger of prejudice, and they are not, we think, comparable to the specific and detailed commentary found inadmissible in [Georgia case law]. For these reasons, if objection had been made to the [unredacted interview], the trial court properly would have overruled the objection.[19]

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[18] (Punctuation omitted.) Id.

[19] (Citations and punctuation omitted.) Id. at 406-407 (3) (a).