## S03A1346. HEWITT v. THE STATE.
### (588 SE2d 722)

HINES, Justice.

A jury found Carl Hewitt ("Hewitt") guilty of malice murder, felony murder, kidnapping with bodily injury, aggravated assault, and robbery in connection with the fatal shooting of Jeffrey Nigel George; Hewitt was sentenced for the malice murder, aggravated assault, and robbery. He appeals his convictions, challenging the sufficiency of the evidence, the permitted scope of cross-examination, and the refusal to allow evidence of the deceased victim's alleged violent reputation and bad acts. Finding the challenges to be without merit, we affirm Hewitt's convictions.[1]

The evidence construed in favor of the verdicts showed the following: On March 18, 2001, Jeffrey Nigel George's beaten and gunshot-riddled body was found in True Love Park in DeKalb County. Although breathing at first, George died shortly after being discovered. He had sustained gunshot wounds to his right front neck, chest, back left shoulder, and right hip, and a grazing wound to the right side of his neck. In addition, George had multiple abrasions and bruises as well as blunt impact lacerations to the right side and back

---

[1] The crimes occurred on March 17 and 18, 2001. In the May term, 2001, a DeKalb County grand jury indicted Hewitt for malice murder, kidnapping with bodily injury, and armed robbery. During the September term, 2001, a DeKalb County grand jury re-indicted Hewitt for malice murder, felony murder while in the commission of kidnapping with bodily injury, kidnapping with bodily injury, aggravated assault with hands and fists, aggravated assault with a rifle, and armed robbery. Hewitt was tried before a jury February 4-13, 2002, and found guilty of malice murder, felony murder, kidnapping with bodily injury, aggravated assault with hands and fists, and robbery; he was acquitted of the remaining aggravated assault charge. On February 15, 2002, Hewitt was sentenced to life imprisonment for malice murder, a concurrent 20 years in prison for aggravated assault, and a consecutive 20 years to serve 10 in prison for robbery. The court found the kidnapping with bodily injury merged for the purpose of sentencing and the felony murder stood vacated by operation of law. *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). A motion for new trial was filed on March 15, 2002, and denied on March 6, 2003. A notice of appeal was filed on April 7, 2003, and an amended notice of appeal was filed on May 6, 2003. The appeal was docketed in this Court on May 28, 2003. The case was submitted for decision on September 11, 2003.

of his head consistent with being struck with the butt of a gun. The cause of death was the gunshot wounds to George's neck and chest.

Three weeks before, George allegedly had stolen ten pounds of marijuana from Hewitt. A dispute between the two men arose as a result of this, and on the Friday before the murder, Hewitt pulled a handgun on George in order to "scare" him. On the night before George's murder, Hewitt and his brother Dania Hewitt ("Dania"), Antonio Montez, German Montez, and Roy Gabbidon gathered at a club. They displayed and exchanged various assault weapons in the parking lot of the club and then set out to find George. Although they were unable to locate George, they did see his truck in the parking lot of a liquor store. The truck was being driven by George's girlfriend. Hewitt approached the girlfriend, his handgun visible in the waistband of his pants, and took George's truck from her as "collateral" for the marijuana theft. He then drove off in the vehicle and abandoned it a short distance away.

The next morning, George and his friend, Theophilus Williams, were at Patrick Cuffy's house making arrangements to recover the stolen truck. Dania arrived at the house, and minutes later, Hewitt and German Montez arrived in a white Ford Taurus. Hewitt exited the vehicle, rushed toward George, and began violently punching him. Soon George fell to the ground, at which point Dania started beating him in the head with the butt of his AK-47. Hewitt began kicking George in the face, and shortly after that, gunfire erupted. Montez jumped into George's black Excursion and drove it to where Hewitt was standing near George. Hewitt then pushed George into the back seat of the Excursion and climbed in after, closing the door behind him. Montez drove off at a high rate of speed. Hewitt fired two gunshots at George. Montez drove the vehicle out of the neighborhood and to True Love Park. Montez and Hewitt dumped George in the park and then several more shots were fired at George before the men drove off. Montez and Hewitt abandoned the Excursion and headed in different directions.

Afterwards, Hewitt celebrated by "high-fiving" with his friends. He told his friend, Harold Gallimore, that he had gone to Cuffy's house to "solve the problem" and that he had shot George. He stated that he shot George because the parties "were in a beef."

1. Hewitt contends that the evidence was insufficient with regard to all of the charges for which he was found guilty. But the contentions are without merit.

(a) Hewitt asserts that the evidence did not support a finding of guilt beyond a reasonable doubt of malice murder because the State did not meet its burden of proof that he directly committed the offense or that he was guilty as a party to the crime of malice murder.

As to his direct culpability, Hewitt urges that the sole evidence

that he shot George came from co-indictee and accomplice German Montez, and that he could not be convicted on the uncorroborated testimony of an accomplice. It is certainly true that an accomplice's testimony must be corroborated in order to support a conviction. OCGA § 24-4-8. "However, 'whether the corroborating evidence is sufficient is a matter for the jury, and even slight evidence of corroboration connecting an accused to a crime is legally sufficient. [Cits.]' *Klinect v. State*, 269 Ga. 570, 572 (1) (501 SE2d 810) (1998)." *Vasser v. State*, 273 Ga. 747, 748 (1) (545 SE2d 906) (2001).

Here, German Montez's testimony that Hewitt was the shooter was corroborated by the evidence of Hewitt's animosity toward George, the fact that Hewitt had previously pulled a handgun on George, and that Hewitt had celebrated George's murder. Moreover, Hewitt's confession to Harold Gallimore that he shot George corroborated Montez's testimony.

Even if there was some evidence that German Montez fired the fatal shots, there was ample evidence to support Hewitt's guilt as a party to the malice murder. "Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during and after the crime." *Marshall v. State*, 275 Ga. 740, 742 (4) (571 SE2d 761) (2002). Here, Hewitt's conduct before, during, and after the fatal shooting was evidence supporting the finding that even if Hewitt was not the trigger man, he intentionally aided and abetted George's murder. See OCGA § 16-2-20 (b) (3) and (4).

(b) Hewitt maintains that the evidence was insufficient to prove his guilt of robbery because it did not show any use of actual force, intimidation, threats, or coercion in obtaining George's vehicle; he argues that there was only circumstantial evidence that George's girlfriend did not willingly turn over the keys, which did not exclude every other reasonable hypothesis save his guilt.

> A taking accomplished by force or intimidation is the "distinguishing characteristic" of robbery — the "gist" of the offense. [Cit.] The force necessary for robbery is actual violence or intimidation "exerted upon the person robbed, by operating upon his fears — the fear of injury to his person, or property, or character." [Cit.] Intimidation is that "terror . . . likely to create an apprehension of danger, and induce a person to part with his property for the safety of his person. [Cit.]" [Cit.] Intimidation is that act by the perpetrator which puts the person robbed "in fear sufficient to suspend the free exercise of his will or prevent resistance to the taking." [Cit.] A threat by a perpetrator to inflict harm constitutes the requisite force or intimidation if that threat of

harm induces the victim/possessor of property to relinquish possession. [Cit.]

*State v. Epps*, 267 Ga. 175, 176 (476 SE2d 579) (1996). The evidence was that Hewitt planned to take the truck as "collateral," and that he had a handgun visible in the waistband of his pants when he approached George's girlfriend in the liquor store parking lot. The girlfriend threw the truck keys to Hewitt, and a man who exited the liquor store at the time of Hewitt's approach dropped the case of beer that he was carrying and ran.

Circumstantial evidence need not exclude every other hypothesis save that of the accused's guilt but only reasonable inferences and hypotheses, and it was for the jury to determine whether all reasonable hypotheses had been excluded. *Pecina v. State*, 274 Ga. 416, 419 (2) (554 SE2d 167) (2001). The jury was authorized to find that Hewitt gained possession and control of the truck by intimidation.

(c) Hewitt next asserts that the evidence was insufficient to prove his guilt of kidnapping with bodily injury because there was no showing that he accomplished or was a party to George's abduction and to holding him against his will; Hewitt urges that inasmuch as George was already in the vehicle when Montez drove away, the act of kidnapping was completed by the time he (Hewitt) entered the vehicle. But the State's evidence was that Carl Hewitt shoved George into the back seat of the vehicle, and then climbed in himself, closing the door to the vehicle. Thus, the jury was authorized to find that Hewitt unlawfully abducted George and held him against his will. OCGA § 16-5-40 (a).

Hewitt further submits that even if he kidnapped George, he could not be found guilty of the crime with which he was charged, kidnapping with bodily injury, i.e., that George was beaten about the face and the head, because such beating was not a part of the kidnapping, and that there also was a fatal variance between the allegations of the indictment and the proof at trial.

"As a matter of law, bodily injury does not have to be inflicted at the same moment as the initial abduction." *Sears v. State*, 270 Ga. 834, 841 (4) (514 SE2d 426) (1999). *James v. State*, 239 Ga. App. 541 (521 SE2d 465) (1999), cited by Hewitt confirms that "whether the bodily injury occurs at the beginning of the kidnapping incident or after the victim has been abducted is immaterial for purposes of proving the elements of the crime." Id. at 541 (1). The initial beating of George was part and parcel of the force used in abducting him.

(d) For the reasons given in Division 1 (c) supra, there is no merit to Hewitt's contention that he could not be found guilty of felony murder because the evidence was insufficient to prove that he committed the underlying felony of kidnapping with bodily injury.

(e) Lastly, Hewitt contends that the evidence was insufficient to prove his guilt of aggravated assault by using his fists. He argues that while the crime of aggravated assault can be committed by the use of hands, the hands must be used in a manner that is likely to or actually does produce serious bodily injury, and that here, the evidence does not show more than battery. However, whether Hewitt's hands and fists were objects used in a manner likely to result in serious injury was a question of fact for the jury to determine. *Scott v. State*, 243 Ga. App. 383, 385 (d) (532 SE2d 141) (2000), citing *Arnett v. State*, 245 Ga. 470, 473 (3) (265 SE2d 771) (1980). See *Haugland v. State*, 253 Ga. App. 423, 425 (2) (560 SE2d 50) (2002). Hewitt's own testimony, eyewitness accounts, and the forensic evidence authorized the jury to find that Hewitt committed an aggravated assault on George by using his hands and fists.

The evidence was sufficient to enable a rational trier of fact to find Hewitt guilty beyond a reasonable doubt of the crimes for which he was charged and convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hewitt contends that his right to confrontation under the Sixth Amendment was violated when his counsel was not permitted to cross-examine co-indictee and State's witness German Montez concerning his possible punishment. But Hewitt's cross-examination about possible punishment was not curtailed; the trial court limited questioning only with regard to the issue of parole.

Hewitt was permitted to fully question Montez about his indictment for George's murder and the related crimes and Montez's understanding of the maximum punishment he could receive for each crime. Hewitt was also allowed to elicit testimony from Montez that by the time of trial, Montez had been incarcerated in the DeKalb County Jail for 11 months, and that while he was in jail, he had been thinking about his family. In fact, Hewitt's attorney was permitted to ask Montez, "You've been thinking about the fact that you could possibly be away from your family for life?" Montez responded that he had thought about it.

It was only after Hewitt's counsel asked Montez if his attorney had informed him "that there was no parole for [aggravated assault]" that the State objected. The jury was removed from the courtroom, and the trial court told Hewitt's counsel that he would not be permitted to delve into the issue of parole because how long Montez would serve in prison would be up to the State Board of Pardons and Paroles.

The trial court's ruling was sound. As this Court reiterated in *State v. Vogleson*, 275 Ga. 637, 638 (1) (571 SE2d 752) (2002),

The Sixth Amendment to the [U. S.] Constitution guarantees

the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." . . . The main and essential purpose of [the right of] confrontation is to secure for the opponent the opportunity of cross-examination. . . . [A]n . . . attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." [Cit.] . . . The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. [Cit.]

*Davis v. Alaska,* 415 U. S. 308, 315-317 (94 SC 1105, 39 LE2d 347) (1974).

This does not mean, however, that the Sixth Amendment's Confrontation Clause does not allow appropriate limitation on the inquiry into an adverse witness's potential bias. Id. at 639 (1). In fact, trial courts have considerable latitude to reasonably limit such cross-examination out of concerns about harassment, prejudice, confusion of the issues, witness safety, or questioning that is repetitive or only marginally relevant. Id.

In this case, there was no evidence of any deal between Montez and the State regarding parole. See *Watkins v. State,* 276 Ga. 578, 580 (3) (581 SE2d 23) (2003). What is more, as noted by the trial court, the authority to grant parole rests with the State Board of Pardons and Paroles, and not the office of the district attorney. *Perez v. State*, 254 Ga. App. 872, 873 (1) (564 SE2d 208) (2002). Thus, the cross-examination regarding parole was irrelevant on the question of Montez's potential bias in testifying favorably for the State. *State v. Vogleson,* supra at 639 (1). It called for mere speculation by Montez. See *Hodo v. State,* 272 Ga. 272 (4) (528 SE2d 250) (2000).

The trial court permitted Hewitt to exhaustively question Montez about his knowledge of his possible punishment, thereby allowing Hewitt to fully explore the possible motivation for Montez's testimony. *State v. Vogleson,* supra at 638 (1). There was no violation of Hewitt's right to confrontation under the Sixth Amendment.

3. Lastly, Hewitt contends that the trial court erred in refusing to allow him to present evidence of George's alleged violent reputation and prior violent or bad acts. Specifically, Hewitt complains that he was not permitted to introduce evidence of George's involvement in illegal drug distribution and that he had been hired to kill an individual.

First, Hewitt was allowed to present evidence of George's illegal involvement with drugs. Furthermore, there was no error in refusing to allow the alleged evidence that George was an assassin.

> In order to show that evidence of specific bad acts of violence of the victim should be admitted, [Hewitt] was, at a minimum, required to (1) follow the procedural requirements for introducing the evidence, (2) establish the existence of prior violent acts by competent evidence, and (3) make a prima facie showing of justification. *Laster v. State*, 268 Ga. 172 (2) (486 SE2d 153) (1997); *Chandler v. State*, 261 Ga. 402 (3) (405 SE2d 669) (1991).

*Shields v. State*, 272 Ga. 32, 34 (3) (526 SE2d 845) (2000). Hewitt failed to meet these procedural and substantive burdens. Hewitt also had to present a legitimate claim of justification, i.e., that George was the aggressor, that he assaulted Hewitt, and that Hewitt was honestly trying to defend himself. Id. This he did not do. On the stand, Hewitt admitted that he "swung the first blow," which culminated in the fatal attack.

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 10, 2003.

*Axam, Adams & Secret, Akil K. Secret,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, John H. Petrey, Shawn E. LagGrua, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellee.