A07A0756. WORTHY v. THE STATE.
(648 SE2d 682)

ADAMS, Judge.

On October 21, 1998, Angel Worthy was tried and convicted of aggravated battery for shooting her boyfriend with a gun owned by her subsequent boyfriend. On appeal she contends the trial court erred by denying her motion for new trial because her trial counsel was ineffective in several regards.

At trial, evidence was presented to show, and Worthy admitted, that in September 1995, she was holding a gun that shot her boyfriend Darrie Rumph in the neck during an argument, which caused Rumph to be paralyzed. Within minutes of the shooting, investigating officer Edward Powell approached Worthy, who was near the scene, and asked her if she had been involved in the incident. Worthy replied, "Yes, I shot him." He asked if she had the weapon, and she said that she did and gave Powell a handgun. He then placed Worthy in the back of his patrol car. He also cleared one round of ammunition from the chamber. A few minutes later, Worthy tapped on the window, and Powell opened the door. She then handed him a single .380 caliber bullet and made this statement, "I snapped it once, and it didn't go off. So I jacked another one in and shot his ass." Another officer heard words of similar effect. The bullet matched the caliber of the semi-automatic gun, and it had marks on it indicating that it had misfired. Two witnesses testified that they saw Worthy shoot Rumph and that although the couple was arguing, Rumph never physically attacked Worthy and the couple never struggled with each other before the gun was fired. Rumph testified about arguing with Worthy during which time he was shot and fell; he never saw the gun. He later spoke to her on the phone and asked her why she shot him. She first responded by saying she did not know. She then said that she had tried to shoot the window out of the car and the gun would not fire.

After being read her *Miranda* rights, Worthy gave a statement to the police. She described an argument with Rumph that began in their residence and moved to his car. She brought a gun from the house to the car at that time. She said she did so because at some time in the past, Rumph had told her that he had a gun and that he would shoot her or kill her. She was trying to leave in the car to go to work and to take her children to another location. After the children and Worthy were in the car, Rumph got into the backseat behind her. Rumph did not threaten her while they were in the car together, but she then got out, and he did too. At that point she called a neighbor to come and get the children, and the children left. Then she pulled the gun out and shot Rumph. She also claimed that there had been some pushing and shoving while she had the gun in her hand and that she recalled the gun going off, but she did not remember pulling the trigger. In her statement, she said that other than the pushing and shoving, there had been no threats or violence leading up to the shooting.

Worthy testified in her own defense. She claimed that early on the morning of the shooting, Rumph had threatened that he would kill her if he saw her with a certain other man. She testified that Rumph came back that evening and asked her to leave their home "tonight," but he did not want her taking his car. She asked to use it, and eventually he relented. When she got the children in the car and got in herself, Rumph climbed in and grabbed her around the neck and also pulled her hair and choked her twice. At one point the car was running and the two of them struggled to control it. She eventually got out of the car and asked bystanders to call the police. Outside the car, he punched her at one point. At some point, the gun fell out of the baby bag inside the car, and both of them reached for it. Worthy got it first, Rumph grabbed her, and the gun went off. She testified that she did not remember pulling the trigger and that the gun belonged to a person who is now her boyfriend. She testified that the gun owner had tried to shoot the gun on a prior day in her presence and the gun had misfired. The owner put the misfired bullet down in a place where one of Worthy's children grabbed it, so Worthy took it and put it in her pocket. That is the bullet that she gave to Officer Powell.

1. The evidence was sufficient to support the verdict of aggravated battery. See OCGA § 16-5-24; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. To prevail on a claim of ineffective assistance, a defendant has "the burden to demonstrate that trial counsel's performance was deficient and that, but for that deficient performance, it is reasonably probable that the result of the trial would have been different." (Citation and punctuation omitted.) *Johnson v. State*, 275 Ga. App.

21, 25 (7) (619 SE2d 731) (2005). "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance." (Citations and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004). In order to rebut this presumption, appellant must show that "counsel's representation fell below an objective standard of reasonableness. [Cit.]" *Knight v. State*, 266 Ga. 47, 48 (4) (464 SE2d 201) (1995). "Effective assistance does not mean that a defendant is entitled to have the best counsel appointed, or any particular counsel, but it does mean that he must have such assistance as will assure him due process of law. *Pineda v. Bailey*, 340 F2d 162, 164 (5th Cir. 1965)." *Hawes v. State*, 240 Ga. 327, 330 (240 SE2d 833) (1977). On appeal, Georgia appellate courts will uphold a trial court's findings of fact unless they are clearly erroneous but review legal conclusions de novo. *Hunter v. State*, 281 Ga. 526 (640 SE2d 271) (2007); *Cherry v. State*, 283 Ga. App. 700 (642 SE2d 369) (2007).

Worthy contends, in separate enumerations of error, that her trial counsel failed to communicate with her regarding the charges and related issues, failed to investigate the case, failed to interview or subpoena witnesses, and failed to discuss a theory of defense with her. At the hearing, Worthy's new counsel called several witnesses in support of these contentions, but he did not call Worthy's trial counsel, who was present, as a witness. Even though Worthy called other witnesses who offered some testimony in support of the claims of ineffective assistance, without trial counsel's testimony, the trial court was allowed to assume that trial counsel's actions were a matter of strategy:

> Because of this heavy burden borne by the defendant and the presumption of strategy by trial counsel, "the failure to call trial counsel as a witness in the motion for new trial hearing alone allows the trial court to assume that the matter was a deliberate trial strategy and to rule against defendant's claim of ineffective assistance." *Baker v. State*[, 251 Ga. App. 377, 379 (2) (554 SE2d 324) (2001)]. See *Cox v. State*[, 279 Ga. 223, 227 (6) (610 SE2d 521) (2005)] (failure to call trial counsel as witness authorized trial court to find that defendant failed to rebut the presumption of effectiveness by clear and convincing evidence).

*Smith v. State*, 282 Ga. App. 339, 345 (4) (638 SE2d 791) (2006). The Court in *Smith* identified one exception to this rule:

The only exception to this rule is where the matter relates to an error allegedly made during the course of the trial that can be determined purely from the trial record. . . .

Id. In this case, each of the alleged deficiencies of trial counsel is a matter that must be addressed outside the trial record. Therefore we cannot conclude that Worthy overcame the strong presumption that counsel provided reasonable professional assistance. See id.

In the last enumeration, Worthy contends the trial judge disregarded the evidence presented at the hearing on the motion for new trial and instead relied on colloquy from the trial regarding some aspects of trial counsel's representation. But Worthy has cited no basis for this assertion, and the trial judge was present and actively listening and questioning witnesses at the hearing on the motion for new trial. We find no error.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 22, 2007.

*Jon G. Branan*, for appellant.

*Kelly R. Burke, District Attorney, Duncan M. Munn, Assistant District Attorney*, for appellee.