**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 16, 2015

# In the Court of Appeals of Georgia

A15A0327. SMITH v. THE STATE.

ANDREWS, Presiding Judge.

A DeKalb County jury returned guilty verdicts against Daryl Austin Smith for four counts of robbery by intimidation (OCGA § 16-8-40 (a) (2)), and the trial court sentenced Smith to an aggregate term of 25 years in confinement followed by 15 years of probation. The trial court denied Smith's motion for new trial as amended, and Smith appeals. Finding no error, we affirm.

1. Viewed in a light most favorable to the jury's verdicts, the evidence adduced at trial revealed that DeKalb County suffered a rash of bank robberies in May and June 2010. Smith was indicted for four of those robberies.

(a) *Count 1*. The evidence showed that Robert Leadingham was working as a teller at a Wachovia Bank branch on Clairmont Road. On May 27, 2010, a man

entered the bank and appeared "uneasy" and "unsure." The man was dressed in a white shirt, hat, and sunglasses. Leadingham, who was in the lobby area of the bank, greeted the man and attempted to sell him an account. Although the man declined, saying he did not have proper identification, Leadingham suggested the man meet with the branch manager. After meeting with the manager, the man left. Leadingham returned to the teller area behind the counter. Approximately 30 minutes later, the man returned; Leadingham, who was working in the drive-through area, spotted the man and approached him. The man placed a handwritten note on the counter. The note stated that the man "wanted all the money in the bank, he had a gun, and he was willing to kill everyone in the bank for the money." The man then told Leadingham that the man would "follow through with [the note]" and gave him a grocery bag. In disbelief, Leadingham collected money from different cash drawers, including a cash bundle equipped with a GPS tracking device, and placed the money in the grocery bag. Leadingham tried to get smaller denomination bills so the man would think he had more cash. Leadingham also calmed another teller who was upset by the robbery. Leadingham then returned the bag to the man, and the man ran from the bank.

(b) *Count 2*. Evidence demonstrated that Mary Rasheed was working as a teller supervisor at a SunTrust Bank branch on LaVista Road. In the early afternoon hours

2

of June 9, 2010, a man walked into the bank, sat down, and left a few moments later. The next day at about the same time, a different man entered the bank, sat down for a few moments, and then approached Rasheed's window at the teller counter. The man was dressed in a long-sleeve white shirt, jeans, a cap, and sunglasses. The man handed Rasheed a note, which stated, in part, "[t]his is not a joke[;] I'm not playing no games." Rasheed was frightened and collected money from her cash drawer, placed it in a plastic bag given to her by the man, and returned it to the man. The cash Rasheed gave the man consisted of 20 dollar bills and smaller denominations. The man then left the bank.

(c) *Count 3*. Evidence revealed that Rhonda Byars was a manager at the Chase Bank at the corner of Flakes Mill Road and Flat Shoals Parkway. In the early afternoon on June 17, 2010, Byars was assisting tellers by working in the teller line. A man approached her window and placed a folded note on the counter. The man was wearing a T-shirt, hat, and sunglasses, and held a cellular telephone to his ear. The man also had tattoos on his arm. The note given to Byars stated that the man wanted "hundreds and fifties" and directed Byars "not to do anything stupid, not to hit any buttons or they would kill everybody in the branch." The note closed with the statement, "this is for real[;] I'm not playing." Byars was "startled and surprised,"

3

obtained cash from a cash dispensing machine, and placed the cash on the counter. The man grabbed the cash and fled.

(d) *Count 4*. On June 23, 2010, Laura Lack was working as a manager at a Chase Bank branch on North Decatur Road. Like Byars, Lack would assist tellers by working in the teller line as needed. Lack was working in the teller line in the early afternoon hours of June 23 when a man walked up to Lack's window and placed a note on the counter. The man had a cellular telephone to his ear and was wearing a white T-shirt, jeans, and sunglasses. The note demanded that Lack "do exactly what I say or I will blow you up[;] give me all of your fifties and hundreds and put it in the bag." Lack, not being given a bag by the man, retrieved two one hundred dollar bills and four fifty dollar bills from her drawer, placed them in a "drive-through envelope", and gave the envelope to the man. The man said, "that's not enough; give me the rest in your top drawer" and "put it in the bag." Upon realizing he had not given Lack a bag, the man produced a brown grocery bag and gave it to Lack. Lack put the additional cash in the bag and returned it to the man. Although Lack attempted to keep the note, the man grabbed it and then left the bank.

Law enforcement believed that the four robberies at issue were part of a larger collection of 14 to 15 robberies which occurred during May and June 2010 and that,

despite as many as four or five suspects in those robberies, the same suspect committed each of the four robberies at issue. One factor in law enforcement's investigation were the tattoos on the suspect's arms. Relatives identified Smith from media coverage of the robberies and telephoned a law enforcement tip line. Law enforcement then began investigating Smith. Smith was arrested at his apartment on July 16, 2010. Leadingham, Rasheed, and Lack identified Smith in court as the person who robbed them.

2. Smith first contends that the State presented insufficient evidence to convict him of robbery by intimidation in Counts 1 (Wachovia) and 4 (Chase), arguing that the State failed to present any evidence of intimidation. Smith's argument is unpersuasive.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, [443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979)]. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Bradford v. State*, 327 Ga. App. 621 (760 SE2d 630) (2014). A person commits robbery by intimidation when, "with intent to commit theft, he takes property of another from the person or the immediate presence of another . . . [b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another." OCGA § 16-8-40 (a) (2). A taking by intimidation

> is the "distinguishing characteristic" of robbery - the "gist" of the offense. The force necessary for robbery is actual violence or intimidation exerted upon the person robbed, by operating upon his fears - the fear of injury to his person, or property, or character. Intimidation is that terror likely to create an apprehension of danger, and induce a person to part with his property for the safety of his person. Intimidation is that act by the perpetrator which puts the person robbed in fear sufficient to suspend the free exercise of his will or prevent resistance to the taking. *A threat by a perpetrator to inflict harm constitutes the requisite force or intimidation if that threat of harm induces the victim/possessor of property to relinquish possession.*

(Citations and punctuation omitted; emphasis added.) *Hewitt v. State*, 277 Ga. 327, 329-330 (1) (b) (588 SE2d 722) (2003). "Circumstantial evidence need not exclude every other hypothesis save that of the accused's guilt but only reasonable inferences

6

and hypotheses, and it [is] for the jury to determine whether all reasonable hypotheses [have] been excluded." Id.

Here, the evidence demonstrated that Smith gave Leadingham a note stating that Smith "wanted all the money in the bank, he had a gun, and he was willing to kill everyone in the bank for the money." Smith also told Leadingham that Smith would "follow through with [the note]." In disbelief, Leadingham collected money from different cash drawers and attempted to calm another teller who was upset by the robbery. Similarly, Smith gave Lack a note to "do exactly what I say or I will blow you up[;] give me all of your fifties and hundreds and put it in the bag." Both Leadingham and Lack testified that their goal was to simply get Smith out of their respective banks.

As a result, the jury could have inferred that the threatening notes delivered by Smith - each claiming to inflict death or serious injury absent compliance with his demands - coupled with his behavior constituted the requisite intimidation to induce Leadingham and Lack to surrender the banks's cash. See *Hewitt*, 277 Ga. at 329 (1) (b). The jury was authorized to find that Smith obtained the cash through intimidation, see Id., and, accordingly, we conclude that the evidence was sufficient to find Smith guilty beyond a reasonable doubt of Counts 1 and 4 of the indictment.

7

See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *Bradford*, 327 Ga. App. at 621.

3. In his next two enumerations of error, Smith contends the trial court erred in giving a jury instruction on conspiracy and in improperly giving the jury instruction on robbery by intimidation. Neither claim has merit.

(a) First, Smith argues that the trial court should not have given a jury instruction on conspiracy because Smith was not charged with the separate criminal offense of conspiracy. See OCGA § 16-4-8. Smith's argument fails.

Prior to trial, the State submitted a proposed jury instruction on conspiracy. During the charge conference, the trial court announced its intention to give the proposed instruction. Smith's trial counsel objected, saying that the charge "would [not] be of any aid to the jury in this case." The State responded and acknowledged the charge was requested to address the agreement between Messrs. Smith and Kelton Huger. The trial court ultimately decided to give the conspiracy charge, but Smith's trial counsel objected, claiming that the trial court would "also have to give [the jury] the option to render a verdict on conspiracy." The trial court reiterated its decision to

give the conspiracy instruction, which it gave during its charge.[1] Smith's trial counsel

preserved the objection to the conspiracy instruction at the close of the charge. See

OCGA § 17-8-58 (a).

"When the evidence supports a finding of conspiracy, it is not error for the trial

court to charge the jury on the subject of conspiracy even if a conspiracy is not

alleged in the indictment." *Mosley v. State*, 296 Ga. App. 746, 751 (4) (675 SE2d

607) (2009) (citing *Edge v. State*, 275 Ga. 311, 313 (6) (567 SE2d 1) (2002)). See

also *Holmes v. State*, 272 Ga. 517, 519 (6) (529 SE2d 879 (2000) (same); *Drake v.*

*State*, 266 Ga. App. 463, 466 (3) (597 SE2d 543) (2004) (same). Furthermore,

> The State may prove a conspiracy by showing that two or more persons
> tacitly came to a mutual understanding to pursue a criminal objective.
> And the conspiracy may be inferred from the nature of the acts done, the
> relation of the parties, the interest of the alleged conspirators, and other
> circumstances.

(Punctuation omitted.) *Edge*, 275 Ga. at 313 (6).

Smith's specific objection - that the conspiracy instruction was improper

because he was not separately charged with conspiracy - is unfounded. See *Edge*, 275

---

[1] The instruction given by the trial court quoted the pattern jury instruction for conspiracy. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 4th ed. (2007) § 2.02.20.

Ga. at 313 (6); *Holmes*, 272 Ga. at 519 (6); *Mosley*, 296 Ga. App. at 751 (4); *Drake*, 266 Ga. App. at 466 (3). Moreover, the evidence adduced at trial revealed that Smith's robberies followed a similar pattern - he wore similar clothing for each robbery, used similar notes, exhibited similar behavior (including the use of the phone), and occurred at similar times of day. In addition, Smith's notes began to specifically ask for large denominations after the first two robberies yielded smaller denominations. Finally, testimony demonstrated that Smith and Kelton Huger participated in the robberies pursuant to an agreement. See *Edge*, 275 Ga. at 313 (6). Therefore, it follows that the trial court's jury instruction on conspiracy was authorized. See Id.; *Mosley*, 296 Ga. App. at 751 (4). Accordingly, there is no error.

(b) Next, Smith asserts that the trial court erred in its jury instruction on robbery by intimidation because it defined the crime in a manner not alleged in the indictment. We are not persuaded.

During the charge conference, the trial court stated that it would redact "or another" from the State's proposed jury instruction on robbery by intimidation (which, as noted infra, comported with the pattern jury instruction for robbery by intimidation). Although Smith's trial counsel then observed that the proposed charge quoted the entire statute on robbery by intimidation, rather than being "tailored to

these facts and to this indictment," trial counsel concluded that "if the Court wishes to read the statute in its entirety that's fine." As a result, the trial court gave the following instruction:

> A person commits robbery by intimidation when, with the intent to commit theft, that person takes property of another from the presence or the immediate presence of another by putting the alleged victim under such fear as would create in the mind of the victim an apprehension of danger to life or limb. The essential elements of the offense that the State must prove beyond a reasonable doubt are that the taking was done with the purpose to commit theft, against the will of the person robbed, and by creating in the mind of the victim an apprehension of danger to life or limb. If you so find these elements to be present beyond a reasonable doubt, you would be authorized to find the defendant guilty of robbery by intimidation.[2]

Trial counsel did not object to the trial court's instruction at the close of its charge. Smith now contends that the trial court should have given a more narrowly tailored instruction that referred to Smith "showing [the victim] a threatening note."

As a threshold matter, because Smith failed to raise this argument as a "specific objection and the grounds for such objection before the jury retire[d] to deliberate,"

---

[2] It does not appear that Smith submitted a written request to charge on robbery by intimidation.

11

OCGA § 17-8-58 (a), the argument has been waived. See OCGA § 17-8-58 (b).

Nonetheless, we are required to evaluate the allegedly erroneous jury instruction for plain error. See OCGA § 17-8-58 (b); *Alvelo v. State*, 290 Ga. 609, 614 (5) (724 SE2d 377) (2012); *State v. Kelly*, 290 Ga. 29, 32-33 (2) (a) (718 SE2d 232) (2011); *Reyes v. State*, 322 Ga. App. 496, 501 (4) (745 SE2d 738) (2013).

> When analyzing jury instructions for plain error, we consider four prongs:
>
> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Reyes*, 322 Ga. App. at 501 (emphasis added). See also *Kelly*, 290 Ga. at 32-33 (2) (a). "Stated more succinctly, the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings." (Punctuation omitted.) *Alvelo*, 290 Ga. at 615 (5).

"Where the indictment charges a defendant committed an offense by one method, it is reversible error for the court to instruct the jury that the offense could be committed by other statutory methods with no limiting instruction." *Sharpe v. State*, 291 Ga. 148, 151 (4) (728 SE2d 217) (2012). Such defects are cured, however, if the trial court "provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." Id. See also *Mikell v. State*, 286 Ga. 722, 724 (2) (b) (690 SE2d 858) (2010). To that end, "[j]ury instructions must be read and considered as a whole in determining whether the charge contained error." *Reyes*, 322 Ga. App. at 501 (4). See also *Henderson v. State*, 320 Ga. App. 553, 562 (8) (740 SE2d 280) (2013).

In this case, there is no error. At the outset, we note that the instruction given by the trial court comports with the relevant pattern jury instruction for robbery by intimidation. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 4th ed. (2007) § 2.60.40.[3] Moreover, upon review of the instructions as a whole, the trial

---

[3] "A person commits robbery by intimidation when, with intent to commit theft, that person takes property of another from the person or the immediate presence of another by putting the alleged victim (or another) under such fear as would create in the mind of the victim (or another) an apprehension of danger to life or limb. The essential elements of the offense that the State must prove beyond a reasonable doubt

13

court recited the charges against Smith; read the indictment to the jury; and properly instructed the jury on the presumption of innocence, that no conviction could result "unless each and every element of the crime as charged is proven beyond a reasonable doubt," that the State bore the burden "to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt," and that the burden of proof never shifts to the defendant. See *Sharpe*, 291 Ga. at 151 (4); *Wright v. State*, 327 Ga. App. 451, 452 (757 SE2d 890) (2014); *Henderson*, 320 Ga. App. at 562; *Tiller v. State*, 314 Ga. App. 472, 475 (3) (724 SE2d 397) (2012). In addition, the trial court's instruction, though citing generally the manner in which robbery by intimidation may be committed, see *Sharpe*, 291 Ga. at 151 (4), emphasized the manner in which the crime was alleged in the indictment by stating that "[i]f after considering the testimony and the evidence presented to you, together with the charge of the Court, you should find and believe beyond a reasonable doubt that the defendant . . . did . . . commit the offenses of robbery by intimidation *as alleged in the indictment*, you would be authorized to find the

are that the taking was done[:] 1) with the purpose to commit theft, 2) against the will of the person robbed, and 3) by creating in the mind of the victim (or another) an apprehension of danger to life or limb. If you so find these elements to be present beyond a reasonable doubt, you would be authorized to find the defendant guilty of robbery by intimidation."

14

defendant guilty." (Emphasis added). See *Tiller*, 314 Ga. App. at 475 (3). Similarly, the proposed verdict form set out each count of the indictment separately. Finally, the indictment was provided to the jury during deliberations, and the verdict form prepared for the jury contained only those charges included in the indictment. See *Sharpe*, 291 Ga. at 151 (4); *Wright*, 327 Ga. App. at 452; *Tiller*, 314 Ga. App. at 475 (3).

When viewed in its entirety, we conclude that the trial court's charge properly limited the jury's consideration to the offense of robbery by intimidation as alleged in the indictment. See *Mikell*, 286 Ga. at 724 (2) (b); *Tiller*, 314 Ga. App. at 475 (3). Accordingly, there is no plain error. See *Alvelo*, 290 Ga. at 614 (5); *Kelly*, 290 Ga. at 32-33 (2) (a); *Reyes*, 322 Ga. App. at 501 (4).

4. Finally, Smith argues that he received ineffective assistance of counsel due to counsel's failure to object to hearsay testimony by Kelton Huger concerning the nature of an alleged conspiracy.

Under Georgia law,

> to obtain reversal of a conviction based on a claim of ineffective assistance of counsel, a defendant has the burden of proving that counsel's performance was deficient, and that, but for the deficiency, there was a reasonable probability the outcome of the trial would have

15

been different. To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under the circumstances confronting counsel at the time without resorting to hindsight. In considering adequacy of performance, trial counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

(Citations and punctuation omitted). *Copeland v. State*, 327 Ga. App. 520, 527 (3) (759 SE2d 593) (2014). If an appellant fails to satisfy either prong of the test for ineffective assistance of counsel, it is not incumbent upon this Court to examine the other prong. See, e.g., *Thomas v. State*, 318 Ga. App. 849, 857 (5) (734 SE2d 823) (2012).

At trial, Huger testified that he was Smith's driver for certain bank robberies. He would drive for Smith after receiving a telephone call from an Ali Cole, from whom Huger previously purchased marijuana. The first call came prior to the Wachovia robbery, when Cole asked Huger "if [he] wanted to make some money on that day" and to drive Smith. Huger then detailed Cole's instructions to Smith, including Smith's attire and maintaining telephone contact inside the bank. Each subsequent robbery occurred in the same manner. Trial counsel did not object to Huger's testimony concerning Cole's participation in the robberies, testifying during

16

the motion for new trial hearing that Huger would be viewed as a hardened criminal and would not be given credibility by the jury.

Pretermitting the question of whether it was error by trial counsel to fail to object to Huger's testimony concerning Cole's involvement, we find that, in view of the overwhelming evidence of Smith's guilt beyond Huger's testimony, Smith has failed to demonstrate a reasonable probability that the result of his trial would have been different but for trial counsel's failure to object. See *Thomas*, 318 Ga. App. at 857 (5); *Jackson v. State*, 306 Ga. App. 33, 37-38 (2) (701 SE2d 481) (2010). Accordingly, we conclude that Smith has failed to satisfy his burden of proof to show ineffective assistance of trial counsel.

*Judgment affirmed. Miller and Branch, JJ., concur.*

17