**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 26, 2020**

# In the Court of Appeals of Georgia

A20A0418. BEST v. THE STATE.

HODGES, Judge.

Following a jury trial, the Superior Court of Bleckley County entered a judgment of conviction against Dixie Nicole Best on one count each of criminal attempt to commit a felony (murder) (OCGA §§ 16-4-1, 16-5-1), aggravated assault on a peace officer (OCGA § 16-5-21), and fleeing or attempting to elude a police officer (OCGA § 40-6-395).[1] Best appeals from the denial of her motion for new trial as amended, arguing that: (1) the evidence was insufficient to support her convictions; (2) the trial court erred in admitting a sheriff deputy's opinion testimony;

---

[1] The jury acquitted Best of three counts of felony murder arising from the death of Montgomery County Sheriff Ladson O'Connor, two additional counts of criminal attempt to commit a felony, and three additional counts of aggravated assault on a police officer.

and (3) she received ineffective assistance of trial counsel. Finding no error, we affirm.

Viewed in a light most favorable to the verdict,[2] the evidence revealed that two Toombs County deputies were assisting a disabled tractor trailer on Line Center Road on the evening of June 15, 2015. As they directed traffic around the truck, the deputies noticed an approaching vehicle perform an abrupt U-turn and proceed down a dead-end road. The deputies also noticed that the vehicle had a broken tail light, and they decided to investigate. Once the tractor trailer cleared the roadway, the deputies proceeded to the dead-end road to look for the vehicle. As they drove down the road, they were met by the vehicle, a black Chevrolet Avalanche driven by a man later identified as Jim Lowery, returning to Line Center Road. The deputies turned around, started to follow the Avalanche, and activated their blue lights in an attempt to stop the vehicle to check the broken tail light. The Avalanche did not stop and returned to Line Center Road.

The pursuit then continued along dirt roads into Montgomery County from Toombs County at speeds exceeding 80 miles per hour. Because of poor visibility caused by dust, the Toombs County deputies slowed down and a Montgomery County

[2] See, e.g., *Sims v. State*, 296 Ga. App. 461 (675 SE2d 241) (2009).

2

deputy in the Avalanche's path took over the pursuit. A Mount Vernon police officer joined the chase, and he and the Montgomery County deputy attempted to "box in" the Avalanche and slow it down. The officers' first attempt was unsuccessful; when the officers made a second attempt as they rounded a curve, Lowery positioned his upper torso out the driver's side window, pointed a long gun at the Montgomery County deputy, and fired, striking the deputy's left front tire. The Mount Vernon officer then took over the lead in the pursuit.

As the chase continued back into Toombs County at speeds between 70 and 90 miles per hour, Lowery continued shooting at the Mount Vernon officer. The Avalanche ultimately came to a complete stop at a T-junction, and when the Mount Vernon officer exited his patrol vehicle to engage Lowery, Lowery again shot at the officer. When the Montgomery County deputy arrived shortly thereafter, the Avalanche sped away, and the two officers lost the Avalanche.

As the officers monitored radio traffic, they heard Montgomery County Sheriff Ladson O'Connor state that he was behind the Avalanche in Montgomery County and that the driver was shooting at him. Sheriff O'Connor indicated that he was going to attempt to "take them out or something to that effect," but contact with the sheriff was lost shortly thereafter. In attempting to rejoin the pursuit, the Mount Vernon officer

3

passed what appeared to be a vehicle on the side of the road and alerted dispatch to a possible wreck.

In the meantime, a Georgia State Patrol ("GSP") trooper located the Avalanche and continued the pursuit in Montgomery County, while the Mount Vernon officer rejoined the chase shortly thereafter. As the trooper pursued the Avalanche, the trooper saw Lowery position his upper torso out the driver's side window holding a long gun, "beaded [him] down[,] and pulled the trigger[,]" firing the long gun at the trooper. Over the course of the chase, the trooper estimated that Lowery shot at him around six times. To hasten the end of the pursuit, the Toombs County deputies, who had been stationed at two different locations in Montgomery County, applied two sets of stop sticks. At about the same time the Avalanche and the trooper drove over the second set of stop sticks, the trooper performed a PIT maneuver, struck the Avalanche, and the two vehicles came to rest. Lowery jumped out of the Avalanche and ran into the woods. Best, who appeared scared, exited the passenger side of the Avalanche, walked toward the officers, and was detained.

After the pursuit concluded, officers discovered the wreckage of Sheriff O'Connor's truck and the sheriff's body pinned underneath. Sheriff O'Connor died as a result of multiple severe injuries he sustained in the crash. In a search of the area

4

around the sheriff's truck, officers found a .410 shotgun shell and shotgun wadding.[3] Lowery was captured the next morning near the Altamaha River separating Montgomery and Toombs Counties.

A Montgomery County grand jury indicted Best for three counts of felony murder arising from Sheriff O'Connor's death, three counts of criminal attempt to commit a felony, four counts of aggravated assault on a police officer, and one count of fleeing or attempting to elude a police officer. Lowery and Best were tried together and their trial was moved from Montgomery County to Bleckley County. A Bleckley County jury returned verdicts of guilty against Best on one count each of criminal attempt to commit a felony, aggravated assault on a police officer, and fleeing or attempting to elude a police officer.[4] The trial court denied Best's motion for new trial as amended, and this appeal followed.

1. In her first enumeration of error, Best contends that the evidence was insufficient to support her convictions. In substance, Best contends that she was merely a passenger in Lowery's Avalanche and that there was no direct evidence that

---

[3] Lowery admitted firing a .410 shotgun at several of the pursuing officers.

[4] The jury convicted Lowery of additional crimes, including the felony murder of Sheriff O'Connor, and his appeal is pending in the Supreme Court of Georgia. See *Lowery v. State*, No. S20A0597 (docketed Dec. 4, 2019).

she participated in steering the Avalanche as Lowery fired at pursuing officers. We are not persuaded.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LEd2d 560 (1979)). As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citation omitted.) *Smith v. State*, 333 Ga. App. 256, 258-259 (2) (775 SE2d 735) (2015). To that end, "[w]hen reviewing the sufficiency of the evidence this Court does not reweigh the evidence or resolve conflicts in testimony. Resolving evidentiary conflicts and inconsistencies and assessing witness credibility are the province of the fact finder, not the appellate court." (Citations and punctuation omitted.) *McNeely v. State*, 296 Ga. 422, 425 (1) (768 SE2d 751) (2015). Moreover, "[c]ircumstantial evidence need not exclude *every* other hypothesis save that of the accused's guilt but only *reasonable* inferences and hypotheses, and it is for the jury to determine whether all reasonable hypotheses have been excluded." (Citation and

6

punctuation omitted; emphasis supplied.) *Smith*, 333 Ga. App. at 259 (2). Accordingly,

> [a] passenger may be charged and convicted as a party to the crime if [she] aided and abetted in the commission of the crime, or if [she] intentionally advised or encouraged the driver to commit the crime. Whether a person was a party to a crime can be inferred from [her] conduct before, during, and after the commission of the crime.

(Citations and punctuation omitted.) *Abney v. State*, 306 Ga. 448, 451 (1) (831 SE2d 778) (2019).

(a) *Criminal Attempt to Commit a Felony (Murder)*. "A person commits the offense of criminal attempt when, with intent to commit a specific crime, [s]he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1; see also OCGA § 16-5-1 (c) ("A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice.").

(b) *Aggravated Assault on a Police Officer*. "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (3); see also

7

OCGA § 16-5-21 (c) (range of punishment for aggravated assault against a public safety officer).

(c) *Fleeing or Attempting to Elude a Police Officer*. Under Georgia law, it is unlawful "for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop." OCGA § 40-6-395 (a); see also *Abney*, 306 Ga. at 451 (1).

(d) *Analysis*. Each of the charges for which Best was convicted was based upon the allegation that she steered the Avalanche while Lowery positioned himself outside the window to shoot at the Georgia State Patrol trooper. As recounted above, the trooper testified that Lowery placed his upper body out the driver's side window and, using both hands, took direct aim at the trooper and fired. During this time, there is no indication that the Avalanche swerved or lost control. To that end, the trooper testified that "to come out the window, maneuver that way to discharge a weapon and the vehicle not alter its course in the slightest would seem to be nearly impossible" and that he was confident that Lowery "had some kind of assistance with driving the vehicle while he [came] out of the vehicle to shoot at me." Moreover, when Lowery

8

came to a complete stop at the T-junction, Best did not exit the Avalanche despite ample opportunity to do so.

In contrast, Lowery testified that Best never steered for him and that it was not difficult to steer the truck while he was shooting out of his window. He further stated that Best "wanted out" and asked him to pull over, and that she did not load his shotgun. Furthermore, the trooper noted that at least one of Best's hands was outside the vehicle at various points in the pursuit.[5] However, the record does not idemonstrate that Best's hands were outside the passenger window when Lowery positioned his upper torso outside the driver's window to shoot at the trooper.

In view of the circumstances of the chase, in which Lowery leaned his upper body out the window of the moving Avalanche while shooting at the trooper, the jury could conclude that Best assisted Lowery by steering the vehicle. Stated differently, the jury was free to reject as unreasonable the hypotheses that Best was a mere passenger who did not assist Lowery, as he positioned his upper torso and arms out the window of a speeding vehicle firing a shotgun at the pursuing trooper. See *Smith*, 333 Ga. App. at 259 (2).

---

[5] Two other officers in the pursuit also reported seeing Best's hands outside the passenger window at various times.

Moreover, the jury was not required to believe Lowery's testimony or to disbelieve the State's witnesses. See *McCord v. State*, 302 Ga. App. 303, 304 (690 SE2d 923) (2010). Indeed, on cross-examination, Lowery admitted that he "would not want to see Ms. Best in trouble."

> Even where the case is based upon circumstantial evidence, it is not necessary that the circumstantial evidence exclude every other hypothesis except that of guilt, but only reasonable inferences and hypotheses. Furthermore, where the defendant offers an explanation of circumstantial facts or an alternative hypothesis of events, the reasonableness of that explanation is for the factfinder. Because the factfinder has heard the witnesses and observed them testify, it is considered more capable of determining the reasonableness of the hypothesis produced by the evidence or lack thereof than is an appellate court.

(Citation omitted.) *McCord*, 302 Ga. App. at 304.

Finally, with the foregoing evidence in mind, it was not necessary to show that Best fled from the wrecked Avalanche. See *Abney*, 306 Ga. at 451 (1) ("[a] passenger may be charged and convicted as a party to the crime if he aided and abetted in the commission of the crime"); compare *Westmoreland v. State*, 287 Ga. 688, 693 (4) (b) (699 SE2d 13) (2010) ("where a passenger flees the scene along with the driver after the police have stopped the vehicle, he becomes chargeable as a party to the crime");

10

*Carter v. State*, 249 Ga. App. 354, 357 (5) (548 SE2d 102) (2001) (reversing conviction for fleeing and attempting to elude where no evidence that passenger "acted in concert with the driver . . . in an effort to flee from the police" or that passenger fled after police stopped the fleeing vehicle).

In short, "[e]vidence connecting the defendant with the crime . . . may be slight and it may be entirely circumstantial." *McNeely*, 296 Ga. at 424 (1). Taken together, we conclude that the evidence was sufficient to permit the jury to convict Best beyond a reasonable doubt of the crimes with which she was charged. See generally *Abney*, 306 Ga. at 451 (1).

2. Next, Best asserts that the trial court erred in admitting opinion testimony by the Montgomery County deputy. In particular, Best presupposes that the deputy was presented as an expert witness and argues that the opinion testimony (1) was not based on the deputy's experience or training; (2) was not beyond the common understanding of any juror; and (3) invaded the province of the jury to decide the ultimate issue of the case. We do not agree.

Our Evidence Code provides that if a witness

11

is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are:

(1) Rationally based on the perception of the witness;

(2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and

(3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702.

OCGA § 24-7-701 (a); compare OCGA § 24-7-707 ("In criminal proceedings, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses."). Importantly,

> nothing in Georgia's Rule 701 (a) prevents a law enforcement officer from being qualified to provide both lay opinion and expert testimony. And lay witnesses may draw on their professional experiences to guide their opinions without necessarily being treated as expert witnesses.

(Citations and punctuation omitted.) *Bullard v. State*, 307 Ga. 482, 492 (4) (837 SE2d 348) (2019); see also *Handy v. State*, 350 Ga. App. 490, 494-495 (4) (829 SE2d 635) (2019), disapproved on other grounds, *McClure v. State*, 306 Ga. 856, 864 (1), n. 17

12

(834 SE2d 96) (2019). We review "a trial court's decision to admit or refuse to admit evidence for abuse of discretion." *Hawkins v. State*, 304 Ga. 299, 303-304 (4) (818 SE2d 513) (2018).

In this case, "[i]t is clear that the officer's testimony qualified as a lay witness opinion under OCGA § 24-7-701 and did not constitute an expert opinion." (Citation and punctuation omitted.) *Handy*, 350 Ga. App. at 495 (4). In response to Best's counsel's questions during her cross-examination of the Montgomery County deputy, the deputy testified that he had advanced training in DUI field sobriety testing, accident reconstruction, motorcycle crash investigations, traffic issues, and Intox 9000 certification, and basic training in defensive driving. During the State's re-direct examination, the deputy testified that, at the moment Lowery positioned his upper torso outside the driver's side window and fired at him, the Avalanche was entering a turn and both of Lowery's hands appeared to be on his weapon. The State asked the deputy, "with your training in law enforcement, particularly your . . . specialized training in traffic, do you see any way how that Avalanche could have maintained the roadway without someone's hand on the steering wheel?" Best objected, arguing that the question called for speculation. The trial court overruled Best's objection, and the

13

deputy "agree[d] that someone else probably would have to steer the steering wheel in that situation, otherwise they would have wrecked."[6]

"Just because the officer's position and experience could have qualified him for expert witness status does not mean that any testimony he gives at trial is considered expert testimony." (Citation and punctuation omitted.) *Handy*, 350 Ga. App. at 495 (4). Here, despite the deputy's testimony concerning his general training, the deputy simply made layperson observations concerning Lowery's inability to maneuver the vehicle while protruding from the driver's window and shooting at the deputy. Furthermore, this testimony was based upon his personal observations during the pursuit, helpful to determine whether Best participated in Lowery's crimes,[7] and was not necessarily based on any particular specialized knowledge. See OCGA § 24-7-701 (a). It follows that, contrary to Best's characterization, the deputy did not provide expert testimony. See *Handy*, 350 Ga. App. at 495 (4). Accordingly, Best has

---

[6] Of note, the State did not tender the deputy as an expert witness and, to the extent Best felt that the State presented the deputy as an expert witness, Best did not object to the failure to so tender the deputy.

[7] See OCGA § 24-7-704 (a); *Thornton v. State*, 307 Ga. 121, 128 (3) (c) (834 SE2d 814) (2019) ("lay opinion testimony is not objectionable simply because it addresses an ultimate issue") (citation omitted).

14

failed to show that the trial court abused its discretion in admitting the deputy's testimony.

3. Finally, Best contends that she received ineffective assistance of trial counsel due to counsel's failure (1) to raise additional grounds in support of Best's motion to sever her trial from Lowery; and (2) to object to improper opinion testimony by a Georgia State Patrol trooper. We do not agree.

Under Georgia law,

> to obtain reversal of a conviction based on a claim of ineffective assistance of counsel, a defendant has the burden of proving that counsel's performance was deficient, and that, but for the deficiency, there was a reasonable probability the outcome of the trial would have been different.

(Citations and punctuation omitted). *State v. Banks*, 337 Ga. App. 749, 751 (789 SE2d 619) (2014). If a defendant fails to satisfy either prong of the test for ineffective assistance of counsel, it is not incumbent upon this Court to examine the other prong. See, e.g., *Thomas v. State*, 318 Ga. App. 849, 857 (5) (734 SE2d 823) (2012). "[W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

15

(a) *Failure to Present Additional Arguments on Motion to Sever*. First, Best alleges that she received ineffective assistance due to trial counsel's failure to argue additional grounds in support of Best's motion to sever her trial from Lowery.

Initially, Best filed a motion to sever her trial "due to media coverage and any prejudice" that might arise from such coverage, noting that keeping Best's and Lowery's trials together would be "highly prejudicial" to Best. In addition, Best's counsel stated during a hearing that Lowery "made statements to Ms. Best that he intends to testify at her trial, should that become necessary. . . ." To prevent Lowery's self-incrimination, Best moved to sever her trial from Lowery's trial and asked that Lowery be tried first. In response, the State noted that "mere hearsay from Ms. Best about communications with her co-defendant . . . does not establish the fact that he is going to testify." Lowery's counsel proffered that Lowery "would testify in [Best's] behalf" if "the trials were separate . . . and [Lowery] had already completed his trial[.]" Best then argued that Lowery's testimony could be "exonerative" and that Best was entitled to a fair trial. After taking the matter under advisement, the trial court denied Best's motion in a March 21, 2017 order.

16

(b) *Failure to Object to Testimony of Georgia State Patrol Trooper*. Second, Best contends that he received ineffective assistance due to trial counsel's failure to object to opinion testimony by the Georgia State Patrol trooper.

In response to the State's direct examination, the trooper testified that he completed police academy and trooper school, including specific training in high-speed pursuits, tactics to end pursuits, and performing PIT maneuvers. The trooper had also been a life-long hunter and received firearms certification at least twice a year. During the pursuit of Lowery's vehicle, the trooper saw Lowery "come out of the [driver's side] window with a gun of some length," aim directly at the trooper, and fire. The following colloquy ensued:

> Q: What kind of effort would it take, based on your training and experience as a trooper, as a hunter, as a State-trained driver, to maintain control of the vehicle while shooting a long gun?
>
> A: It would seem to be nearly impossible to not — to come out the window, maneuver that way to discharge a weapon and the vehicle not alter its course in the slightest would seem to be nearly impossible.
>
> Q: Based on your training and experience, and what you saw that night on the road, do you believe that Jim Lowery had to have help steering that vehicle?

17

A: I was a hundred percent confident, at the time, that he . . . had some kind of assistance with driving the vehicle while he [came] out of the vehicle to shoot at me.

In addition, based upon his experience with firearms generally and shotguns in particular, the trooper stated that "[i]t would be extremely difficult" to reload a shotgun while driving. Best did not object to the trooper's testimony.

(c) *Failure to Call Trial Counsel as a Witness*. In both instances, Best failed to call trial counsel as a witness during the hearing on her motion for new trial. With regard to allegations of ineffective assistance of counsel,

[b]ecause of [the] heavy burden borne by the defendant and the presumption of strategy by trial counsel, the failure to call trial counsel as a witness in the motion for new trial hearing alone allows the trial court to assume that the matter was a deliberate trial strategy and to rule against defendant's claim of ineffective assistance.

(Citation and punctuation omitted.) *Worthy v. State*, 286 Ga. App. 77, 79 (2) (648 SE2d 682) (2007); see also *Handy*, 350 Ga. App. at 495 (4); *Howard v. State*, 340 Ga. App. 133, 141-142 (3) (c) (796 SE2d 757) (2017) (holding that "in the absence of evidence to the contrary, counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim") (citation and

18

punctuation omitted); *Lowery v. State*, 260 Ga. App. 260, 261 (1) (581 SE2d 593) (2003) (finding that trial counsel "was not questioned regarding the decision not to seek a severance [and] [t]herefore, the decision is presumed strategic, and strategic choices made after thorough investigation are virtually unchallengeable") (citation and punctuation omitted). Accordingly, Best has failed to show error by trial counsel and, as a result, has not demonstrated ineffective assistance of counsel.

In sum, we conclude that the evidence was sufficient to support Best's convictions beyond a reasonable doubt, that the trial court did not err in admitting a sheriff deputy's testimony, and that Best failed to demonstrate that she received ineffective assistance of trial counsel. Accordingly, we affirm the trial court's order denying Best's motion for new trial.

*Judgment affirmed. McFadden, C. J., and Doyle, P. J., concur.*